IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

STERLING ASKEW, as Father, Next of Kin
and as Administrator Ad Litem/Personal
of the Estate of STEVEN ASKEW, Deceased, and
SYLVIA ASKEW, as Mother and Next of Kin
of STEVEN ASKEW, Deceased,

    Plaintiffs,

v.                                                   No. 2:14-cv-02080-STA-tmp

CITY OF MEMPHIS,
TONEY ARMSTRONG, Individually,
and in His Official Capacity as the
Police Director of the Memphis Police Department,
OFFICER NED AUFDENKAMP (#11914),
Individually and in his Official Capacity
as a Police Officer with the Memphis Police Department,
OFFICER MATTHEW DYESS (#12402),
Individually and in his Official Capacity
as a Police Officer with the Memphis Police Department,

    Defendants.

---

**MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' PROPOSED EXPERT, DAVID H. CISCEL Ph.D.**

---

Comes now the Defendant, City of Memphis, by and through counsel, and submits this Memorandum in support of its Motion to Exclude Testimony of Plaintiffs' expert witness, David H. Ciscel, Ph.D.

## BACKGROUND

This case arises out of a police shooting which occurred on January 17, 2013, at a complex known as Windsor Place Apartments in Memphis, Tennessee. On the date in question, Memphis Police Department ("MPD") Officers, Ned Aufdenkamp and Matthew Dyess, received a loud music disturbance called at 3193 Tyrol Court. While checking the area, they encountered an individual, Steven Askew,

decedent, who was passed out behind the wheel of a running vehicle at 3197 Royal Knight Cove, which is in the same general area. While trying to assess the situation, Officer Aufdenkamp noticed a hand gun in decedent's lap and alerted his partner. According to the officers, when they awakened decedent, he pointed the gun at Officer Aufdenkamp and both officers opened fire resulting in the fatal wounding of decedent.

Following the shooting, an investigation was conducted by MPD's Homicide Unit and the Inspectional Services Bureau ("ISB") to determine whether any criminal charges were to be filed or whether there were any administrative violations. The Homicide Unit submitted a report to the Attorney General for the State of Tennessee, who after reviewing same, declined to submit the matter to the grand jury. On the administrative side, after conducting its investigation in connection with the Homicide Unit, ISB submitted a report and determined that there were no administrative violations and that the shooting was justified.

A civil rights action was filed pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution by Sterling Askew, as father and next-of-kin and administrator of the Estate of Steven Askew, and Sylvia Askew, as mother and next-of-kin of Steven Askew in the Circuit Court of Shelby County, Tennessee. Plaintiffs take issue with the findings of the ISB that the shooting was justified. Among other things, they challenge the practice, procedures and training within MPD and the adequacy of the investigation. The case was removed to Federal Court.

On the assumption decedent's death was wrongful, Plaintiffs' counsel retained the services of David H. Ciscel, Ph.D. who submitted a report in this case. (ECF 166-2, Exh. 7) Dr. Ciscel provided an expert opinion on decedent's lost future earnings as an aircraft mechanic. Dr. Ciscel's deposition was taken. (ECF 166-1)

## APPLICABLE LAW

**Rule 702. Testimony by Expert Witness**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

      (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b)      the testimony is based on sufficient facts or data;

      (c)      the testimony is the product or reliable principles and methods; and

      (d)      the expert has reliably applied the principles and methods to the facts of the case.

The Rule obligates the trial court to act as the gatekeeper and to insure that any expert evidence – scientific or otherwise – is relevant and reliable. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Although not a definitive checklist or test, the *Daubert* factors guide a trial court in its gatekeeping inquiry which must be "tied to the facts of a particular case." *Id.* at 591. Where the expert testimony factual basis, data, principles, methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the expert. *Kumho* at 149.

      If the witness is relying solely or primarily on experience, he or she must explain how that experience leads to the conclusion reached and how that experience is reliably applied to the facts. *Thomas v. City of Chattanooga*, 398 F.3d 426, 431 (6th Cir. 2005). To be considered reliable, the expert's proposed testimony must be based on more than a subjective belief or unsupported speculation. Fed. R. Evid. 702; *Daubert* at 590. It must be properly supported. Fed. R. Evid. 703. If relevant, the probative value of the evidence must be weighed against "the danger of unfair prejudice, confusion of the issues or misleading the jury" as well as "considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403. Expert opinion evidence may be properly excluded if its prohibitive value is substantially outweighed by these considerations. *Id.* "It is the proponent of the testimony that must establish its admissibility, i.e. a preponderance of proof." Fed. R. Evid. 702; *Nelson v. Tennessee Gas Pipeline Company*, 243 F.3d 244, 251 (6th Cir. 2001).

      When, as here, lost future earnings are at-issue, the expert's opinion is speculative unless it is based on realistic assumptions about decedent's future employment prospects. *Boucher v. United States Suzuki Motor Corp.* 73 F. 3d 18, 21 (2nd Cir. 1996). The expert should project from

3

the job decedent had at the time of injury; but, if the expert relies on assumptions about a future profession that are a "complete break" with work history at the time of injury, then the testimony is speculative unless supported with a sufficient factual foundation that decedent's employment prospects had undergone a "fundamental change" and decedent was on the "verge" of that new career. *Id.* Further, if that expert testimony and/or opinions are based on speculative assumptions lacking a sufficient factual foundation, then the expert opinion should be outright excluded and not submitted to the jury for its determination of the weight that opinion "deserves." *Id.*

If the expert is opining about future earnings in a profession the injured party never had, a high level of factual support is required for the assumption same would enter that profession. See *Overstreet v. Shoney's Inc*., 4 S.W. 3d 694, 704-705 (Tenn. App. 1999). A trial court must distinguish those with "only vague hopes of entering a profession and those with demonstrated ability and intent to do so." *Id.* at 705. If entering the new profession requires a diploma or a credential, then the facts must show, for example, the injured party's "academic preparation, ability, and perseverance" to obtain same. *Id.*

Ciscel's opinion is attached as Exhibit 1. He projects decedent's lost future earnings assuming decedent started employment as an assistant aircraft mechanic two weeks after his death and stayed in the aircraft mechanic profession advancing in it through age 59. Since decedent was not in that profession when he died, Ciscel's two main assumptions are: 1) decedent was on the verge of entering the aircraft mechanic profession when he died; and, 2) decedent would have commenced work in it in February 2013.

Ciscel testified he based his assumptions about decedent becoming an aircraft mechanic on the report of Dr. C. Greg Cates, whose report is attached as Exhibit 2. Cates however did not opine

decedent was on the verge of entering that profession. Cates' report poses a hypothetical "if" that Ciscel misinterpreted and therefore Ciscel's assumptions lack any factual support.

**CATES REPORT/AIRCRAFT MECHANIC ASSUMPTION**

In drafting his January 19, 2015 expert opinion, Ciscel reviewed documents from decedent's scant, 2009-2013, employment history noting he had done some auto repair, but primarily auto detailing, and noting his annual income ranged from $11,645.00 in 2010 decreasing to $2,931.00 in 2011. (ECF 166-1, Ciscel Depo. at 53/23-54/3 and 70/5-13). He received no other information on decedent's employment history and never spoke with his parents, the Plaintiffs. (*Id.* at 45/22-47/4). Ciscel admitted decedent was not in the aircraft mechanic profession at the time of his death. (*Id.* at 52/13-53/1). Ciscel testified he was not opining decedent would have had a career in aircraft mechanics, and that he relied strictly on Cates' report for Ciscel's assumption decedent would have had a career in aircraft mechanics. (*Id.* at 59/9-17 and 59/22-60/4). He testified his opinion was strictly that if decedent was in that profession, then he would have earned X. (*Id.* at 54/13-22).

Ciscel was asked what he relied on in Cates' report for his assumption decedent would enter this new profession. (*Id.* at 59/22-60/8) He then reviewed Cates' report and agreed it was strictly general information printed off the internet, and contained nothing about decedent. (*Id.* at 60/9-61/15). Ciscel then admitted there was nothing in Cates' report on which he relied other than "the first sentence of his report" which reads "based on the information available Mr. Askew could have been employed as an entry level aircraft mechanic assistant or aircraft technician." *Id.* at 60/5-61/15 and 62/1-9. Again, neither Cates nor Ciscel showed what that "information available" was.

Ciscel then testified he assumed Cates performed a review of decedent's educational background and his family's general income stability and that the review he assumed occurred was

reasonable support for Cates' "first sentence" assumption. (*Id.* at 63/7-15). Ciscel then admitted Cates did not show he performed any analysis of decedent's employment or educational history. (*Id.* at 64/4-13). Ciscel then testified he, Ciscel, reviewed decedent's social and educational background and "did not find Dr. Cates' opinion irrational." (*Id.* at 64/20-65/1).

The document Ciscel stated he reviewed and relied on in concluding Cates' aircraft mechanic assumption was not "irrational," was the "diploma as an aircraft mechanic 2008" Ciscel understood decedent received. (*Id.* at 66/15-21). Ciscel then admitted that this document he thought was a diploma when he formulated his opinion was merely a "graduation bulletin" from the Tennessee College of Applied Technology ("TCAT") and not a diploma. (*Id.* at 67/4-19). Then, when presented with the deposition testimony of TCAT's designated official, Diane Wilkerson, that decedent had not graduated but was merely listed in the bulletin as courtesy, Ciscel admitted the bulletin was not a diploma and decedent did not graduate with an aircraft mechanic diploma, that his expert opinion could not be based on Cates' report and that there was no factual support for his assumption decedent was on the verge of, or would have had, a career as an aircraft mechanic. (*Id.* at 72/1-9, 74/3-21, 79/24-81/7, 81/16-23; See ECF 164/1, Diane Wilkerson Depo. at 18/18-24, 20/22-21/1, 25/12-22 and 59/6-61/4).

**ASSUMPTION REGARDING FEBRUARY 2013 EMPLOYMENT**

Ciscel then admitted that for decedent to start his new career as an assistant aircraft mechanic in February 2013, he would have needed both a diploma and to pass an FAA examination. (*Id.* at 74/15-75/12). He admitted decedent could not have taken the FAA exam until he had a diploma. (*Id.* at 76/2-4). Ciscel admitted for decedent to get a diploma, he would have needed to pass a competency test on "airframe" and a second competency test on "power frame." (*Id.* at 76/5-23). Although he admitted he read the Wilkerson deposition, Ciscel would not

6

acknowledge Wilkerson's testimony that decedent had not finished the required course work for a diploma, failed the airframe competency test and never took the power frame competency test. (*Id.* at 80/1-2, 81/1-16 and 85/6-11; Wilkerson Depo. at 18/22-24, 26/20-27/2, 27/23-28/5, 29/22-30/1 and 65/13-67/9).

Finally, Ciscel admitted that his opinion of decedent's lost future earnings based on decedent beginning employment in February 2013, was based on the assumption decedent had satisfied one requirement for becoming an assistant aircraft mechanic; namely, a diploma. (*Id.* at 77/8-14). His original opinion assumed decedent had a TCAT diploma, but Ciscel, in the deposition, admitted he, Ciscel, was incorrect and decedent did not have a diploma. (*Id.* at 77/16-78/10; see 72/3-9 and 72/24-73/7).

## **ASSUMPTION DECEDENT WOULD COMPLETE EDUCATION**

Early in his deposition, Ciscel testified an important consideration for determining future earnings of one who required a credential, like a diploma, to enter a new profession, was "stick-to-itiveness." (*Id.* at 33/1-13). Ciscel testified he had noted testimony that decedent expressed interest in completing his aircraft mechanic education. Ciscel then discounted this testimony admitting that the facts decedent had not returned to TCAT in four years and never contacted the school to restart his education "reduce[d]…the probability that he would have become an assistant aircraft mechanic." (*Id.* at 86/19; See also Wilkerson Depo. at 21/8-24 and 24/15-20). Ciscel then admitted:

> "The fact that he had not successfully completed course work at Tennessee Technology Center in Memphis [TCAT] indicated to me that the assumption he would become an assistant aircraft mechanic was a low probability assumption."

*Id.* at 87/1-6.

7

**CONCLUSION**

C. Greg Cates hypothesized decedent "could be employed as an entry level aircraft mechanic assistant or aircraft technician;" he did not opine he "would" have been so employed. Ciscel states he relied on Cates' report for his new profession assumption when he initially wrote his opinion, but Ciscel clearly misread "could" as "would." Ciscel further erred in assuming a courtesy entry of decedent's name in the TCAT graduation bulletin was a diploma; it was not a diploma. Ciscel ultimately admitted he could not rely on Cates' report or on the bulletin/diploma to support an assumption decedent would have entered the aircraft mechanic profession; and, since Ciscel testified he did not opine decedent would enter that profession, the assumption lacks any factual support. Ciscel erred in assuming decedent had the credentials necessary to enter the aircraft mechanic profession and his opinion is therefore wild speculation lacking a sufficient factual foundation.

Ciscel also admits he erred in assuming decedent had satisfied all the other conditions for entering the aircraft mechanic profession. It is clear there was no way decedent could have earned an income as an assistant aircraft mechanic in February 2013 because he had satisfied none of the conditions, or obtained the credentials, for entering that profession. Ciscel also admits, based on decedent's history, conduct and lack of "stick-to-itiveness" that it was a "low probability" decedent, had he not died, would have someday gone into that profession.

Ciscel's report is wild speculation because his two key assumptions lack any factual foundation. There is only a vague possibility decedent would have ever entered the aircraft mechanic profession, or any profession, and an opinion on lost future earnings based on that assumption is improper. Ciscel admits his assumptions are groundless and this Court should

therefore grant this Motion and exclude David Ciscel, his opinion and any testimony in this matter.

Respectfully submitted,

/s Richard J. Myers
Richard J. Myers #15577
Henry L. Klein, #8856
APPERSON CRUMP PLC
6070 Poplar Ave., Suite 600
Memphis, TN 38119
Phone:  901-756-6300
Attorneys for City of Memphis

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 23, 2015 a true and correct copy of the forgoing document was served on the following by filing with the Court's electronic case filing system.

Howard Brett Manis
MANIS LAW FIRM
60 South Main, Suite 102
Memphis, TN 38103

Jeffrey S. Rosenblum
Matthew Thomas May
ROSENBLUM & REISMAN
6070 Poplar Avenue, Suite 550
Memphis, TN 38119

Elijah Noel, Jr.
Harris Shelton Hanover Walsh, PLLC
One Commerce Square, Ste. 2700
Memphis, TN 38103

Mary Elizabeth McKinney
Godwin Morris Laurenzi & Bloomfield, P.C.
50 N. Front St, Ste. 800
Memphis, TN 38103

Zayid Saleem
City Attorney's Office
125 N. Main Street, Ste. 336
Memphis, TN 38103

/s/ Richard J. Myers

K:/tbutler-/rjm/city of Memphis/askew, sterling/Memo in Support of Motion to Exclude Ciscel.docx