IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

STERLING ASKEW, as Father, Next of Kin
and as Administrator Ad Litem/Personal
of the Estate of STEVEN ASKEW, Deceased, and
SYLVIA ASKEW, as Mother and Next of Kin
of STEVEN ASKEW, Deceased,

    Plaintiffs,

v.                                                      No. 2:14-cv-02080-STA-tmp

CITY OF MEMPHIS,
TONEY ARMSTRONG, Individually,
and in His Official Capacity as the
Police Director of the Memphis Police Department,
OFFICER NED AUFDENKAMP (#11914),
Individually and in his Official Capacity
as a Police Officer with the Memphis Police Department,
OFFICER MATTHEW DYESS (#12402),
Individually and in his Official Capacity
as a Police Officer with the Memphis Police Department,

    Defendants.

---

REPLY OF DEFENDANT CITY OF MEMPHIS
TO PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF MEMPHIS'
MOTION TO EXCLUDE TESTIMONY OF MICHAEL A. KNOX
TOGETHER WITH APPLICABLE LAW

---

For Reply to Plaintiffs' Response to Defendant City of Memphis' Motion to Exclude Testimony of Plaintiffs' expert, Michael A. Knox, Defendant states as follows:

In its Response, Plaintiffs state as follows:

> Plaintiffs submit that this court should have the opportunity to hear testimony of Michael A. Knox, whether in a hearing or at trial through a voir dire, prior to ruling on such Motion. Plaintiffs should be allowed to set forth a proper foundation for the issues

>raised in this Motion and Knox should be given the opportunity to fully testify as to his qualifications to give such opinion and basis for such opinions.

DE 212, pp. 1, 2.

To follow Plaintiffs' line of reasoning defeats the purpose of Daubert Motions prior to trial. Short of extenuating circumstances, Mr. Knox's qualifications and opinions should be determined prior to trial. Under Rule 702 Federal Rules of Civil Procedure, the Judge acts as a gatekeeper and having the expert's report and his deposition is enough to make a determination as to whether the expert should be allowed to go forward. Allowing him to testify at trial would serve no purpose since he has already testified by deposition. (DE 146) As far as voir dire is concerned his resume is included in his report. (DE 145)

## THE SHOOTING

Plaintiffs refer to the City's criticism of Mr. Knox's opinion saying that none of them relate to admissibility or qualifications of Mr. Knox's testimony. (DE 212, pp. 6, 7) One has to do with Mr. Knox's failure to explain how the gun in Mr. Askew's possession ended upon the floor board on the left side of the car. (DE 212, p. 7) Another has to do with Mr. Knox's failure to take into consideration the movement of the body following gunshot wounds causing the arms to rotate or flail around moving them in various positions when they were struck. (DE 212, pp. 7, 8) This is significant because it coincides with Mr. Askew reaching across his body and pointing his gun at Officer Aufdenkamp on the passenger side of the vehicle. He was then shot and as a result the body twisted around causing his left arm to fall to his left side. This allowed shots from the driver's side of the car to penetrate his left arm which would explain the location of the wound as reflected in the Autopsy Report. This would also explain how the gun dropped to the floor board following the wound to the left arm. To these various criticisms the Plaintiffs respond by

saying that the City can certainly inquire about these on cross-examination at trial. (DE 212, pp. 7, 8) The problem is that it is obvious Mr. Knox has not taken into consideration any of the points raised by the City which goes to the overall admissibility of his testimony.

Next the Plaintiffs address the City's contention that a relevant factor is the abrasions of the ring finger on Mr. Askew's left hand. (DE 212, p. 9) Plaintiffs contend that there is no evidence to support City's position that Mr. Askew was pointing his gun at Officer Aufdenkamp and challenges the cites to the deposition of medical examiner Miguel Laboy in an attempt to support its theory. (DE 212, p. 9) Plaintiffs argue that Dr. Laboy's testimony was taken "completely out of context". (DE 212, p. 9) Plaintiffs then quote the testimony of Dr. Laboy. (DE 212, p. 9) Without question, he states that the wound to Mr. Askew's finger could have been the result of his having his hand across the body and pointing toward the passenger side of the car and that the wound could be from glass which comes in close to him. (DE 212, p. 9) It is difficult to understand how that testimony is taken out of context. It could not be more clear. Next the Plaintiffs challenge Mr. Laboy's expertise. (DE 212, pp. 9, 10) While he is not an expert in the field of crime scene reconstruction, he is certainly an expert in the location of wounds to the body which would include entry and exit.[1] Furthermore, it does not take a re-constructionist to conclude that if one is pointing a gun in a certain direction and shots are being fired through a window, that glass shards could cause an abrasion to the finger. With all of this having been said there is no explanation why Mr. Knox did not consider this scenario. He simply did not take this into consideration stating that the gunshot wounds are really what he is relying upon. (DE 146, p. 32) To be complete, a forensic reconstruction expert should consider all factors.

---

[1] Plaintiffs' position that Dr. Laboy has not been retained nor disclosed as an expert is without merit since Plaintiffs' counsel noticed and took his deposition. (DE 212)

3

The glaring weakness in Mr. Knox's opinion is that he simply does not refute the various scenarios raised by the City. Obviously he considers his position to be the only plausible explanation. Then the Plaintiffs attempt to counter again by saying that these are matters for cross-examination. (DE 212, pp. 7, 8) There is no need for cross-examination if the expert's testimony is not admissible. When an expert does not refute the various scenarios, he is engaging in sheer speculation and conjecture which precludes admissibility. In Tamraz v. Lincoln Elec. Co., 620 F.3d 665 (6th Cir. 2010) the court held that the expert's knowledge requirements are more than subjective belief or unsupported speculation, citing Daubert 509 U.S. at 590. There the court made the following inquiry and conclusions: "(1) Did the expert make an accurate diagnosis of the nature of the disease? (2) [*24] Did the expert reliably rule in the possible causes of it? (3) Did the expert reliably rule out the rejected causes? If the court answers "no" to any of these questions, the court must exclude the ultimate conclusion reached." Id. at 673. Although the case deals with a medical expert, by analogy this holding applies in the case at hand since Mr. Knox does not rule out or refute the different scenarios posed by the City. Allowed to testify, he would simply be telling the jury that his way is the only way.

## INVESTIGATION

In his critique of the investigation in this case, Mr. Knox starts off by pointing out discrepancies in the various Memphis Police Department reports regarding VIN numbers, license tag numbers and the color of Mr. Askew's automobile. (DE 212, pp. 12, 13) In the scheme of things these discrepancies are immaterial as there is no question about the automobile involved. As previously referenced Mr. Knox states that these variances were of no consequence in his reconstruction. (DE 145, p. 7)

4

Plaintiffs state that Mr. Knox has set forth in his report that the investigation conducted by Defendant City of Memphis was poor and "shoddy" and that his deposition testimony is even more telling about how the investigation was inadequate and was "<u>deliberately indifferent</u> to the rights of citizens." (emphasis added)   (DE 212, p. 13)   Obviously, Plaintiffs and Mr. Knox acknowledge that deliberate indifference is the standard.  Plaintiffs go on to quote Mr. Knox's dissertation in his deposition regarding the significance of the investigation and its overall effect (DE 212, pp. 13, 14).   Then he says "when all you do is just say, well here is what they said so we are going to accept that that's what happened, here we go then that is the message you're communicating to the rank and file officers is just that this is what happened and then you're good. We're not going to really ever investigate to figure out whether you did that or not."  (DE 212, pp. 13, 14)   This statement is nothing more than his conclusions without any basis in fact or logic. See <u>Berry v. City of Detroit</u>, 24 F.3d 1342, 1351 (6th Cir. 1994).

Regardless of Mr. Knox's assertions that the investigation was poor, shoddy and inadequate, this does not amount to a policy of deliberate indifference to the Mr. Askew's constitutional rights.   Deliberate indifference in this context does not mean a collection of sloppy or even reckless oversights.   See <u>Doe v. Clayborne County</u>, 103 F.3d 495, 508 (6th Cir. 1996).  A showing of simple or even heightened negligence will not suffice.   <u>Stimler v. City of Florence</u>, 126 F.3d 856, 867 (6th Cir. 1997)

Plaintiffs do not dispute that they must show a pattern of practice of bad investigations for municipal liability to attach. (DE 212, p. 14)   They go on to submit that Mr. Knox's opinion is that the investigation in this case was inadequate and it is not his job to prove that there is a pattern or practice of bad investigations, nor does he have to reference prior investigations to give his opinion.   (DE 212, p. 14)   While it may not be his job to reference prior inadequate investigations

without such proof Plaintiffs do not have a cause of action. See Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005), citing Monell v. Dept. of Social Srvs., 436 U.S. 658, 694 (1978); McGuire v. Warner (2009 U.S. Dist. Lexis 35644*21); Tompkins v. Frost, 655 F.Supp. 468, 472 (E.D. Mich. 1987).

Next the Plaintiffs refer to Major Mark Winters who said the investigation in this case was thorough and this shows a pattern of inadequate investigations if this was done the same as previous investigations were done. (DE 212, p. 14) Again, there is no logic to this conclusion since there is no proof of inadequate prior investigations. To go down this rabbit trail, they say that Mr. Knox can also rely upon the opinions of Plaintiffs' other expert, Mr. McFadden, who has reviewed almost 40 previous Memphis Police Department investigations involving officer-involved shootings and is prepared to testify that such investigations created a pattern of inadequate investigations and violations of citizens' civil rights. (DE 212, p. 14) Suffice it to say Plaintiffs will get no comfort out of Mr. McFadden's testimony which has been challenged and in particular with regard to prior cases.[2] (DE 143, pp. 1, 32) The glaring deficiency in Plaintiffs' reliance upon Mr. McFadden's testimony regarding prior cases is that it cannot be supported by existing law. He could not testify as to whether there were any challenges to any of these investigations. (DE 131, p. 18) For that matter there is nothing in the record that there were any complaints about prior investigations or that the City was notified of any inadequate prior investigations and took no action. See Morrison v. Bd. Of Trs. 529, F.Supp.2d 807, 825 (S.D. Ohio 2007) (it cannot be said to be a policy of ratifying unconstitutional conduct by failing to properly investigate a complaint when no complaint was made); Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997) (plaintiff ordinarily cannot show that a municipality acted with

---

2 For the City's challenges to Mr. McFadden's report and testimony see the Motion to Exclude his testimony and Memorandum in Support thereof and the Reply to Plaintiffs' Response. (DE 142, 143, 219)

deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond); citing Board of County Comm'rs of Bryan County v. Brown, 117 S.Ct. 1382, 1390 (1997) and City of Canton v. Harris, 489 U.S. 378, 390-91 (1989).

Plaintiffs state that Director Armstrong and others believe that it would be unacceptable to handle officer-involved shooting investigations differently than other investigation yet it is undisputed that the City does exactly that in every officer-involved shooting investigation. (DE 212, p. 15) There is nothing in the record to support this so called undisputed statement.

The Plaintiffs contend that in this case, the Memphis Police Department allowed these officers to talk with one another between the shooting and their statements and that the officers gave statements on the scene to a first responding officer and the written report by that officer was not provided to Plaintiffs at the beginning of their investigation. (DE 212, p. 15) They further state that the Defendant Officers gave inconsistent statements and the City did not follow up on eyewitness statements or properly canvas the crime scene. (DE 212, p. 15) This attempt to support Plaintiffs' contention that this was an inadequate investigation is not in accord with §1983 law. First of all, this investigation involves a single incident which does not establish municipal liability and there is nothing to show that these actions were the moving force behind any constitutional violations. See Oklahoma City v. Tuttle, 471, U.S. 808, 821-23 (1985) (absent evidence of prior existence of policy or custom of failing to investigate or discipline officers, being a single incident of unconstitutional activity by an officer is insufficient to impose municipal liability.) Once an individual's rights have been violated a subsequent failure to conduct a meaningful investigation cannot logically be the "moving force" behind the alleged constitutional deprivation. Hysell v. Thorp, 2009 U.S.Dist. Lexis 11597*66; Also See Tompkins, 655 F.Supp. at 472 (wrongful conduct after an injury cannot be the proximate cause of the same injury); Fox v.

7

Van Oosterum, 987 F.Supp.597, 604 (W.D. Mich. 1997) (argument that decision not to investigate made after alleged violation took place somehow caused that violation, defies logic.)

Plaintiffs must show not only that the investigation was inadequate, but that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the shooting here. See Doe, 103, F.3d at 508.

## TRAINING

Plaintiffs state that Mr. Knox intends to offer opinions that although the City has produced training records with outlines of courses for training that it is not proof that the officers were adequately trained. (DE 212, p. 16) They then go on to cite portions of Mr. Knox's testimony to the effect that if the officers acted in accordance with their training they were not trained properly. (DE 212, p. 17) He specifically refers to high-risk stop procedures. (DE 212, p. 17) Based upon Mr. Knox's opinion, the City is constrained to refer back to its Memorandum in Support of Its Motion to Exclude Mr. Knox's testimony wherein it states as follows:

> Mr. Knox acknowledges that he has received the training records for both the officers which includes basic recruit curriculum and several hundred pages of documents. (DE 146, p. 45) He says that the training records indicate that they got what is fairly standard law enforcement type training. (DE 146, p. 45) In looking at the records, everything appears that they received the type of training that they should receive. (DE 146, p. 45) As to training regarding high risk stops, he states that the Memphis Police Department records are standard. It is the same kind of training records that you would see in just about any law enforcement agency, you know, of any reasonable size agency around the country. (DE 146, p. 45)

(DE 154, p. 16)

It would seem disingenuous for Mr. Knox to concede that the Memphis training records regarding high-risks stops are standard and then say the training was inadequate based upon the

8

statements by the officers. The training records speak for themselves. There is no evidence that the City deviated from its training as set out in their records. Even if the officers thought they were following their training and it turns out otherwise, this does not establish that the training was inadequate.

Plaintiffs acknowledge that the deliberate indifference standard applies to training, citing City of Canton v. Harris, 489 U.S. 378 (1989). (DE 212, p. 16) It should be pointed out that in Harris the court said as follows:

> The focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.

Id. at 390.

Even assuming arguendo that the City's training was negligent, the court has rejected the notion that a negligent training program can create municipality liability noting that federal courts should generally refrain from "second guessing municipal employee-training programs." Canton, 489 U.S. 391-392. "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the county has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Eibel v. Melton, 904 F.Supp.2d 785, 810-11 (M.D. Tenn. 2012) citing Fisher v. Hardin, 398 F.3d 837, 849 (6th Cir. 2005). Needless to say there is no proof that the City was put on notice of improper training as complained of by Mr. Knox. Mr. Knox's criticism of the City's training is without basis in fact and §1983 law and should be excluded.

## POLICE PRACTICES

Plaintiffs state that Mr. Knox, based on his police experience, training, and knowledge is critical of the Defendant Officers for the manner in which they handled <u>the events minutes if not seconds</u> before the shooting of Mr. Askew. (emphasis added) (DE 212, p. 17)  The City takes issue with Mr. Knox's reference to the events leading up to the shooting in this case and whether or not their acts conform to best police practices particularly in light of the segmenting rule.[3]  Plaintiffs refer to the case of <u>Dickerson v. McClellan</u>, 101 F.3d 1151, 1161 (6th Cir. 1996) for the proposition that the time frame is a critical aspect of excessive force cases.  (DE 212, p. 18)  However, <u>Dickerson</u> points out that you scrutinize only the seizure itself and not the events leading to the seizure for reasonableness under the Fourth Amendment because the Fourth Amendment prohibits unreasonable seizures, <u>not unreasonable or ill-advised conduct in general</u>. (emphasis added) <u>Id</u>. at 1162.  The court goes on to say that in reviewing the Plaintiffs' excessive force claim we limit the scope of our inquiry to the moments preceding the shooting.  <u>Id</u>. at 1162.

The Plaintiffs submit that Mr. Knox should be allowed to give opinions concerning the conduct of the officers and how they handle the interaction with Mr. Askew as this behavior is the very issue in this case.  (DE 212, pp. 18, 19)  They go on to recap the sequence of events leading up to the shooting.  (DE 212, p. 19)  They list such things as failing to inquire whether Mr. Askew was committing a crime; failing to use alternative methods to verbal commands; failing to engage in high-risk traffic stop procedures; failing to determine that the loud music complaint did not indicate Mr. Askew's involvement.  (DE 212, p. 19)  Plaintiffs argue that all of the actions of the officers from the time they arrived at the apartment complex until the time they shot Mr. Askew were one continuous set of actions that lead to his death.  (DE 212, p. 19)  Plaintiffs are trying to

---

3 Claims based upon violations of state law and police procedures are not actionable under §1983, <u>Medina v. Cram</u>, 252 F.3d 1124, 1133 (CA 10, 2011) citing <u>Davis v. Scherer</u>, 468 U.S. 183, 194-96 (1984).

avoid the segmenting rule. In Greathouse v. Couch, 433 F.Appx. 370, 371 (6th Cir. 2011) the court said that under the segmenting rule the court is to carve out the events surrounding the challenged police action and evaluate the reasonableness of the force by looking <u>only at the moments immediately preceding the officer's use of force which approach applies even to encounters lasting very short periods of time</u>." (emphasis added)

In addition to Mr. Knox's testimony being irrelevant under segmenting rule, there is no proof of a pattern or practice regarding the officers' approach which would exhibit deliberate indifference.

## INAPPROPRIATE LEGAL CONCLUSIONS

Plaintiffs comment on the City's objection to terms such as "objectionable reasonable" or "modified" or "caused or contributed" and that Mr. Knox is using such terms to emphasis his view of the seriousness of Defendants' failures. (DE 212, pp. 21, 22) Whatever his intentions, under Sixth Circuit law, he is not entitled to use legal terms and express legal conclusions. Berry v. City of Detroit, 24 F.3d 1342, 1353 (6th Cir. 1994). Specifically, the court said that the Sixth Circuit is in accord with other circuits in requiring the exclusion of expert testimony that <u>expresses a legal conclusion</u>. (emphasis added); citing Hygh v. Jacobs, 91 F.2d 359, 363 (2nd Cir. 1992) In accord with Berry is Killion v. KeHE Distribs., LLC, 761 F.3d 574, 592-93 (6th Cir. 2014) (an expert may not define legal terms); Summerland v. County of Livingston, 240 Fed.Appx 70, 81 (6th Cir. 2007) (an expert report cannot contain improper conclusions); Cutlitt v. City of Toledo, 488 Fed.Appx 107, 119 (6th Cir. 2012) (the expert opinion must be based on the facts in the case and cannot represent legal conclusions); Bradley v. Ferndale, 148 Fed. Appx 499, 507 (6th Cir 2005) (it is the responsibility of the court, not testifying witnesses to define legal terms).

11

Plaintiffs note that it is disingenuous on the part of the City to file a Motion on this issue when their very own expert uses language in his Affidavit/Report which encompasses what could be construed as legal conclusions. (DE 212, p. 21)  They go on to quote Plaintiffs' expert as saying, "The policies, procedures and training of the MPD that were involved in this evaluation reflect deliberate and precise information that comports with the generally recognized police practices that are utilized throughout the United States." (DE 212, p. 21)  Obviously the use of the word "deliberate" illustrates sound practices and is not being used in a negative sense. Furthermore it is interesting that the Plaintiffs' quote from the expert's opinion that the policies and practices of the Memphis Police Department comply with the generally recognized police practices that are utilized throughout the United States. All of which would vindicate the City. It should also be noted that there have been no challenges to Defendant's expert since he has not been deposed nor has a Daubert Motion been filed to exclude his testimony.  Ignoring the admonition set out in Berry, Mr. Knox indulges in other legal conclusions stating that "By failing to adequately investigate an officer-involved shooting, the Memphis Police Department is rubber stamping the officers' conduct and setting precedent for use of deadly force investigations." (DE 212, p. 23)

Next the Plaintiffs submit that should this court determine that certain terms not be used by Mr. Knox in providing his opinions, this can certainly be handled through a limiting instruction. (DE 212, p. 23)  The City respectfully submits that the court has enough basis as set out in the pleadings to issue an Order that Mr. Knox's use of legal terms and conclusions should be excluded.

## CONCLUSION

For the following reasons the testimony of Plaintiffs' expert, Michael A. Knox, should be excluded:

1. Mr. Knox's reconstruction testimony regarding the shooting is not admissible in that it is based upon conjecture and unsupported conclusions.

2. Mr. Knox's report and expected testimony regarding the investigation by the Memphis Police Department is irrelevant pursuant to existing law.

3. Mr. Knox's testimony regarding training within the Memphis Police Department is irrelevant pursuant to existing law.

4. Mr. Knox's testimony regarding police practices is irrelevant pursuant to existing law.

5. Mr. Knox's use of legal terms and conclusions should be excluded based upon existing law.

> Respectfully submitted,
> /s/ Henry L. Klein
> Henry L. Klein, #8856
>
> /s Richard J. Myers
> Richard J. Myers #15577
> APPERSON CRUMP PLC
> 6070 Poplar Ave., Suite 600
> Memphis, TN 38119
> Phone:  901-756-6300
> hklein@appersoncrump.com
> rmyers@appersoncrump.com
> Attorneys for City of Memphis

CERTIFICATE OF SERVICE

    I do hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF filing system, which shall send notification of such filing to the following this 25th day of November, 2015:

Howard Brett Manis, Esq.
MANIS LAW FIRM
1000 Ridgeway Loop Road
Suite 320
Memphis, TN 38120

Zayid Saleem
City Attorney=s Office
125 N. Main Street
Ste. 336
Memphis, TN 38103

Jeffrey S. Rosenblum, Esq.
Matthew T. May, Esq.
ROSENBLUM & REISMAN
6070 Poplar Avenue
Suite 500
Memphis, TN 38119

Elijah Noel, Jr., Esq.
Harris Shelton Dunlap Cobb & Ryder
One Commerce Square
Suite 2700
Memphis, TN 38103

Deborah E. Godwin, Esq.
Mary Elizabeth McKinney, Esq.
Godwin Morris Laurenzi & Bloomfield, P.C.
Morgan Keegan Tower
50 N. Front St.
Suite 800
Memphis, TN 38103

                                        /s/ Henry L. Klein