IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| STERLING ASKEW and SYLVIA ASKEW, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 14-cv-02080-STA-tmp |
| | ) |
| CITY OF MEMPHIS, et al., | ) |
| | ) |
| Defendants. | ) |

---

### ORDER AFFIRMING MAGISTRATE JUDGE'S DECISION

---

Defendant City of Memphis filed a motion to exclude the testimony of Plaintiff's expert, Garry L. McFadden, on September 24, 2015. (ECF No. 142.) The motion was referred to the United States Magistrate Judge for determination on that same date. (ECF No. 144.) On February 29, 2016, Magistrate Judge Tu M. Pham issued an order granting in part and denying in part Defendant's motion. (ECF No. 282.) Defendant City filed objections to the Magistrate Judge's order on March 4, 2016. (ECF No. 283.) Plaintiffs filed a response to Defendant City's objections on March 18, 2016. (ECF No. 290.) For the reasons set forth below, the decision of the Magistrate Judge is **AFFIRMED**.[1]

---

[1] The order of reference noted that failure to timely assign as error a defect in the Magistrate Judge's order would constitute a waiver of that objection. (ECF No. 144 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a)).) Plaintiffs' response to Defendant City's objections merely asks the Court to affirm the decision of Magistrate Judge Pham; Plaintiffs have not objected to the portion of the order partially granting Defendant's motion to exclude McFadden's testimony. (Resp., ECF No. 290.) Consequently, the Court finds that Plaintiffs have waived any objections to the order.

1

Background

Plaintiffs Sterling and Sylvia Askew, the parents of Steven Askew, the decedent, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated the civil rights of their deceased son under the Fourth and Fourteenth Amendment Rights to the United States Constitution.[2] The Magistrate Judge included the following background summary in his order; neither party has objected to his recitations of the facts.

> On the evening of January 17, 2013, the Memphis Police Department ("MPD") received a call concerning loud music coming from an apartment located at 3193 Tyrol Court in Memphis, Tennessee. MPD Officers Ned Aufdenkamp and Matthew Dyess were dispatched to respond to the call. For reasons unknown, the Officers left the Tyrol Court location after responding to the noise complaint and went to an adjacent apartment complex, the Windsor Place Apartments, located at 3197 Royal Knight Cove. From here, the parties' versions of events diverge drastically.
>
> The City and the Officers (collectively "Defendants") allege that while checking the same general area around the Tyrol Court apartments on the night in question, the Officers saw Steven Askew passed out behind the wheel of a running vehicle in the parking lot of the Windsor Place Apartments. When the Officers approached the vehicle to assess the situation, Officer Aufdenkamp noticed a handgun in Askew's lap and notified Officer Dyess. The Officers then woke Askew up by tapping loudly on his car window and shouting loud verbal commands, at which time Askew made hand gestures towards the Officers and pointed the gun at Officer Aufdenkamp. Both Officers opened fire on Askew, which ultimately resulted in his death.
>
> Plaintiffs allege that on the night in question, Askew was asleep in his car in the parking lot of the Windsor Place Apartments, waiting for his girlfriend who resides there to return from work. Upon spotting Askew in his vehicle, the Officers angled their patrol car towards Askew's car and turned on their overhead lights to illuminate his vehicle; however, the Officers never activated any blue lights, sirens, or other emergency equipment to get Askew's attention. Plaintiffs do not dispute that Askew had a gun in the car (which he was legally permitted to carry), but assert that he never pointed the gun at the Officers, and certainly did not fire the weapon. Plaintiffs also point out that although one officer reported that he saw Askew with a gun in his right hand, Askew actually had a cigar in his right hand at the time of the incident. The Officers fired a total of twenty-two

---
[2] (Cmplt., ECF No. 1-2.)

2

shots that night, hitting Askew multiple times and killing him.[3]

## Magistrate Judge's Order

Plaintiffs retained McFadden to provide expert testimony concerning the adequacy of the MPD investigation of Askew's death, as well as the adequacy of the MPD's training of its officers generally. Magistrate Judge Pham summarized Defendant City's arguments that McFadden's testimony should be excluded as follows: (1) McFadden is not qualified as an expert because he has never submitted an expert report, testified as an expert witness in a court proceeding, or authored any treatises, papers, or articles; (2) he has not conducted studies concerning the "48-hour rule" and, therefore cannot express an opinion about it;[4] (3) he does not provide adequate support for his conclusions, some of which are speculative; (4) some of his opinions are not relevant and should be excluded because the "segmenting rule" applies; and (5) some of his opinions are legal conclusions and relate to an individual's state of mind and, as such, are beyond the scope of acceptable expert testimony.[5]

In making his decision, the Magistrate Judge considered the briefs and exhibits filed in support of Defendant's motion, Plaintiffs' response to the motion, Defendant's reply to Plaintiffs' response, McFadden's report and curriculum vitae, McFadden's testimony at his deposition, and the applicable law before granting the motion in part and denying the motion in

---

[3] (Mag. J. Ord. at pp. 2-3, ECF No. 282.)

[4] Magistrate Judge Pham explained that the MPD has a policy in which homicide detectives must wait forty-eight hours before obtaining information from officers involved in a shooting. (*Id.* at p. 5 n. 1.)

[5] (*Id.* at p. 5.)

part.[6] The Magistrate Judge analyzed the Court's "gate-keeping role" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[7] and determined as follows.

McFadden's Qualifications as an Expert

Magistrate Judge Pham rejected Defendant City's challenge to McFadden's qualifications as an expert witness. Defendant argued that McFadden is not qualified as an expert because, prior to this case, he had never been employed as an expert and he has not authored any treatises, papers, or articles. After looking at the relevant case law, Magistrate Judge Pham determined that neither the lack of previous expert witness experience nor the fact that a witness has never published any articles renders an expert witness's testimony inadmissible. Instead, "the presence or absence of such qualifications almost always bears on the weight that the jury should assign to the testimony and not on the admissibility of the testimony itself."[8]

In finding that McFadden is qualified as an expert, Magistrate Judge Pham looked at the entire record, including McFadden's work as a homicide detective for twenty-one years and employment as a law enforcement officer for thirty-three years; McFadden's current work in the homicide support division, where he has established best practice procedures for homicide detectives, trained detectives and crime scene technicians, and created homicide training curriculum; and McFadden's attendance at numerous training seminars and his presentations

---

[6] (*Id.* at p. 2.)

[7] 509 U.S. 579 (1993) (holding that Federal Rule of Evidence 702 requires that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony).

[8] (Mag. J. Ord. at pp. 12-13 (quoting *Benton v. Ford Motor Co.* 492 F. Supp. 2d 874, 876 (S.D. Ohio 2007), ECF No. 282.)

4

relating to homicide investigations.[9]

Opinion Regarding 48-Hour Rule

In his deposition, McFadden opined that the MPD's policy that homicide detectives must wait forty-eight hours before getting information from officers involved in a shooting hinders the detectives from properly investigating the incident. He testified that he has attended investigative schools and seminars all around the country as a member of the International Homicide Investigators Association, that he had never heard of the 48-hour rule before becoming involved with this case, and that he does not know of any other police department that utilizes the 48-hour rule in officer-involved shootings.[10] Defendant City argues that McFadden's opinion as to "the efficacy of the 48-hour rule" should be stricken because McFadden in not familiar with studies that discuss this "Rule" and he has not conducted any of his own studies.[11]

Magistrate Judge Pham found that Defendant's argument went to the weight of McFadden's testimony and not to its admissibility because "[e]xperts are allowed to base their opinions on their personal experience, as McFadden has done here."[12]

Basis for McFadden's Opinion

In its motion, Defendant argued that McFadden has not adequately supported his opinions and that his opinions are based on speculation and conjecture. Magistrate Judge Pham determined that McFadden had adequately explained the basis for most but not all of his

---

[9] (*Id.* at p. 13.)

[10] (*Id.* at p. 14 (citing McFadden Dep. ECF No. 131).)

[11] (*Id.* at pp. 14-15.)

[12] (*Id.* at p. 15 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).)

conclusions.

Magistrate Judge Pham denied Defendant City's motion to strike the following portions of McFadden's opinion based on McFadden's detailed analysis of the evidence which adequately explained the basis for his conclusions and based on McFadden's investigating over 800 homicides: the investigation of Askew's death was inadequate because officers did not interview potential witnesses and individuals who lived at the apartment complex where the incident occurred until several days later; investigators did not properly follow up on a tip provided by a witness who said there was another individual who saw the entire incident and they did not attempt to locate the individual; and investigating officers never explored the inconsistency between various officers' statements.[13] Magistrate Judge Pham also allowed the opinion of McFadden as to Defendant Officer Dyess's "panicked state" when he fired his weapon.[14]

Magistrate Judge Pham agreed with Defendant City that McFadden did not provide an adequate basis for the following opinions: the motivation behind the thoroughness of the investigation of Askew's death; the reason the officers' stories might have changed; and the effects of the purported inadequate investigation and inadequate training. Magistrate Judge Pham found that these opinions were speculative and beyond the scope of McFadden's expertise and, therefore, should be stricken.[15]

Application of the "Segmenting" Rule

Defendant City argued that the segmenting rule prohibits McFadden from providing any

---

[13] (*Id.* at pp. 17-18.)

[14] (*Id.* at p. 19.)

[15] (*Id.* at pp. 20-21.)

expert testimony based on events leading up to the ultimate use of force by Defendant Officers. Magistrate Judge Pham agreed with respect to Plaintiffs' excessive force claim and determined that McFadden may not reply on the events that occurred before Defendant Officers' use of force when opining about Plaintiffs' excessive force claim.[16] However, Magistrate Judge Pham did not prohibit McFadden from considering Defendant Officers' conduct leading up to Askew's death in relation to Plaintiffs' failure to train claim because the segmenting rule does not apply to such claims.[17]

Legal Conclusions

Defendants argued that McFadden's report contains inappropriate legal conclusions. Specifically, Defendant City objects to McFadden's use of word "ratified" in his statement that "[t]he officers testified that no supervising officer had been critical of their conduct on the night in question and as the MPD chose not to discipline them for any of their actions, the MPD has ratified their conduct…."[18] Defendant objects to the use of the word "purposely" in the statement, "I think [the Officers] purposely changed their statement after getting the information from the scene and realizing that the scene evidence, forensic evidence or the ballistic evidence did not support what they had first told Officer Drew."[19] And, Defendant objects to the word "deliberate" in the statements "Discovery Documents, including the statements and testimony of Officers Dyess and Aufdenkamp, demonstrated that their own unreliable and deliberate conduct

---

[16] (*Id.* at p. 22.)

[17] (*Id.* at p. 24 ("The Sixth Circuit has expressly permitted the use of expert testimony in establishing failure to train claims.").)

[18] (*Id.* at p. 25 (citing ECF No. 134).)

[19] (*Id.* (citing ECF No. 131.)

7

created the high risk aspect of this encounter." (ECF No. 134.) When asked in his deposition what he meant by 'deliberate,' McFadden explained that he meant 'it was done on purpose or purposely done.'"[20] Magistrate Judge Pham found that McFadden's use of these words in this context did not constitute improper legal conclusions.[21]

Defendant City also complained of McFadden's purported testimony that Defendant Officers "lied." After reviewing McFadden's deposition testimony, the Magistrate Judge determined that McFadden had not expressed such an opinion. Instead, in response to defense counsel's questions about who else had reviewed his expert report and what comments were made, McFadden replied that his wife had reviewed the report and thought that Defendant Officers had lied.[22]

Standard of Review

Pursuant to 28 U.S.C. § 636(b), a district court shall apply a "clearly erroneous or contrary to law" standard of review for "nondispositive" preliminary matters such as motions to compel.[23] Fed. R. Civ. P. 72(a) states that a district judge "shall consider" objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."[24] "The clearly erroneous standard applies only to factual findings made by the Magistrate Judge, while legal

---

[20] (*Id.*)

[21] (*Id.* at p. 26.)

[22] (*Id.* at p. 27.)

[23] *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). *See also* 28 U.S.C. § 636(b)(1)(A).

[24] Fed. R. Civ. P. 72(a); *Bell v. Int'l Bhd. of Teamsters*, 1997 WL 103320 *4 (6th Cir. 1997).

8

conclusions will be reviewed under the more lenient contrary to law standard."[25] Under the clearly erroneous standard for findings of fact, the Court need only consider whether any evidence or showing exists to support the Magistrate Judge's finding and whether the finding was reasonable.[26] "When examining legal conclusions under the contrary to law standard, the Court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent."[27]

The party filing the objections or appeal from a magistrate judge's ruling has the burden of proving that the decision was clearly erroneous.[28] "Rejection of expert testimony 'is the exception, rather than the rule.'"[29]

Objections and Analysis

As previously noted, because Plaintiffs failed to object to Magistrate Judge Pham's order either in their response or in a separate filing, the Court **AFFIRMS** the portion of the order granting Defendant's motion to strike the following portions of McFadden's opinion: (1) The

---

[25] *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp.2d 603, 605 (W.D. Tenn. 2009) (quotation omitted).

[26] *Tri–Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles*, 75 F. Supp.2d 835, 839 (W.D. Tenn. 1999) (citations omitted).

[27] *Doe v. Aramark Educ. Res., Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994) (internal quotation marks omitted)). *See also* 32 Am.Jur.2d Federal Courts § 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure").

[28] *See Lopez v. Metropolitan Government of Nashville and Davidson County*, 646 F. Supp.2d 891, 921 (M.D. Tenn. 2009); *see also Marks v. Struble*, 347 F. Supp.2d 136, 149 (D.N.J. 2004).

[29] *MAR Oil Co. v. Korpan*, 973 F. Supp.2d 775, 781 (N.D. Ohio 2013) (quoting Fed. R. Evid. 702 Advisory Committee's Note, 2000 Amend.); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (same).

portion of McFadden's opinion concerning the motivation behind the thoroughness of the investigation of Askew's death, the reason the officers' stories might have changed, and the effects of the purported inadequate investigation and inadequate training is hereby **STRICKEN;**[30] (2) Any opinion or testimony by McFadden that relies on the events that occurred before Defendant Officers' use of force when opining about Plaintiffs' excessive force claim is hereby **STRICKEN;** (3) Any purported testimony by McFadden that Defendant Officer's "lied" is hereby **STRICKEN**.

Defendant City made timely objections to portions of the Magistrate Judge's decision, and the Court will consider those objections on the merits. Defendant contends that the Magistrate Judge erred in finding that (1) McFadden is qualified to give an expert testimony; (2) McFadden is qualified to give an opinion regarding the 48-Hour Rule; (3) there is an adequate basis for McFadden's opinions; (4) the segmenting rule does not apply to Plaintiffs' failure to train claim; and (5) McFadden may testify as to "legal conclusions."[31] The Court finds that

---

[30] Specifically stricken are the statements that the MPD's investigation "certainly creates the appearance that the MPD either does not want to discover any evidence to contradict the self-serving stories of the officers that killed Steven Askew or they did discover facts that would support prosecuting the officers and chose to sweep those acts under a rug to avoid the embarrassment of having to prosecute two white officers, one with lengthy history of misconduct, for the death of an innocent black man with no prior criminal record"; "Memphis would have had a riot" if the officers involved were prosecuted; "the chain of command simply provided incomplete and inadequate summaries of the evidence that the investigating officers wanted the chain of command to see as if the whole investigation was just an exercise to exonerate the officers without really trying to get to the truth"; the method in which witnesses were interviewed "shows a bias environment in favor of supporting the officer's actions"; "lack of training and policy implementation was the moving force behind the death of Mr. Askew"; and the MPD "is sending the message to its other officers that they would be justified in using deadly force in a situation like the one at issue in this case."

[31] (Obj. p. 2, ECF No. 283.)

Defendant City has not met its burden of proving that the Magistrate Judge's order was clearly erroneous or contrary to law.

McFadden's Qualifications

Although Defendant City, in its objection, argues generally that McFadden is not qualified as an expert, Defendant focuses on McFadden's testimony concerning the "48-Hour Rule."[32] The Magistrate Judge properly looked to the law of the Sixth Circuit in determining that "[a]n expert may certainly rely on his experience in making conclusions," as long as the expert explains "how that experience leads to the conclusion reached."[33] Defendant contends that McFadden did not properly explain how his personal experience led to his conclusion that the MPD's policy that homicide detectives must wait forty-eight hours before getting information from officers involved in a shooting hinders a proper investigation of the incident.

McFadden explained that waiting forty-eight hours before interviewing the officers gives them time to "get together and match their statements together."[34] Moreover, the Rule "gives the officers a chance to look at the statement, look at the evidence and have casual conversations with each other during the crime scene, outside of the apartment and off duty."[35] McFadden explained that these opinions were based on his attendance at investigative schools and seminars all around the country as a member of the International Homicide Investigators Association and

---

[32] (*Id.* at p. 3.)

[33] (Mag. J. Ord. at p. 16, ECF No. 285 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (internal citation and quotation marks omitted)).)

[34] (McFadden Dep. p. 37, ECF No. 131.)

[35] (*Id.* at p. 38.)

his years of experience as a homicide investigator.³⁶ Magistrate Judge Pham's decision that McFadden's opinion was based on his experience as a homicide investigator and was admissible is not clearly erroneous or contrary to law.

Basis for McFadden's Opinion

In his decision, Magistrate Judge Pham carefully considered Defendant's argument that McFadden's opinion that the investigation was inadequate based on his review of thirty-nine other homicide cases investigation by the MPD should be excluded because those cases did not involve a failure to investigate complaint. Defendant argues that these cases cannot be used to show a pattern of constitutional violations necessary to establish liability under § 1983.³⁷

As correctly pointed out by Magistrate Judge Pham, Defendant's argument goes to the merits of Plaintiffs' claims and not to the admissibility of McFadden's testimony. Defendant has failed to show that the finding allowing this testimony was clearly erroneous or contrary to law.

Application of Segmenting Rule

The Magistrate Judge found that the segmenting rule does not prevent McFadden's consideration of Defendant Officers' conduct leading up to Askew's death for Plaintiffs' failure to train claim. In excessive and deadly force cases, the Sixth Circuit generally applies a "temporally segmented analysis to the possible erroneous actions taken by police officers."³⁸ Referred to as the "segmenting rule" or "segmenting approach," the Sixth Circuit "embrace[s] a somewhat narrow interpretation of the Supreme Court's mandate that courts look to the totality

---

³⁶ (*Id.* at pp. 37-51.)

³⁷ (Obj. at p. 5, ECF No. 283.)

³⁸ *Chappell v. City of Cleveland*, 585 F.3d 901, 914 (6th Cir. 2009).

12

of the circumstances in determining if excessive force is used."[39] Thus, under the segmenting rule, a court is to "'carve up' the events surrounding the challenged police action and evaluate the reasonableness of the force by looking only at the moments immediately preceding the officer's use of force," an approach that "applies even to encounters lasting very short periods of time."[40] Defendant City has not cited any authority for the proposition that the segmenting rule applies to failure to train claims, and the Court knows of no such authority.

Defendant City also argues that McFadden's opinion does not create an issue as to the adequacy of Defendant's training program under *City of Canton, Ohio v. Harris*.[41] This argument goes to the merits of Plaintiffs' claim and not the admissibility of McFadden's testimony. Defendant has not met its burden of showing that this portion of Magistrate Judge Pham's decision is clearly erroneous or contrary to law.

Legal Conclusions

Defendant City objects to the Magistrate Judge's finding that McFadden's use of the terms "ratified," "deliberately," and "purposely" are not legal conclusions. It is well-settled that an expert's opinion must stop short of embracing the "legal terminology" which frames the ultimate legal conclusion which the jury must reach.[42]

In his decision finding that these terms were not improper legal conclusions, the Magistrate Judge cited *Heflin v. Stewart Cnty., Tennessee*,[43] which held that the admission of

---

[39] *Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001).

[40] *Greathouse v. Couch*, 433 Fed.App'x 370, 372 (6th Cir. 2011).

[41] 489 U.S. 378 (1989).

[42] *See Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).

13

expert testimony generally stating that conduct demonstrated "deliberate indifference" was not error because it "merely emphasized the witness's view of the seriousness of the defendants' failures" and *Hatton v. Spicer*,[44] which stated that "[w]hile an expert may testify as to ultimate fact issues or use 'legal' words in a non-legal fashion, an expert may not define legal terms or advise the jury of the law in the context of a particular fact situation." These cases provide adequate support for the Magistrate Judge's reasoning.[45] Accordingly, the Court finds that this portion of the Magistrate Judge's decision was not clearly erroneous or contrary to law.

Conclusion

Having reviewed the Magistrate Judge's order, the parties' briefing on appeal, and the entire record of the proceedings, the Court holds that the Magistrate Judge's ruling was not clearly erroneous or contrary to law. Therefore, the decision of the Magistrate Judge granting in part and denying in part Defendant's motion to strike is **AFFIRMED**.

IT IS SO ORDERED.

                                            s/ S. Thomas Anderson
                                            S. THOMAS ANDERSON
                                            UNITED STATES DISTRICT JUDGE

                                            Date:  April 25, 2016.

---

[43] 958 F.2d 709, 715 (6th Cir. 1992).

[44] 2006 WL 5249850 at *1 (E.D. Ky. July 7, 2006).

[45] In its objection, Defendant City mentions other terms purportedly not discussed by the Magistrate Judge. (Obj. p. 7, ECF No. 283.) The reasoning of *Heflin* and *Hatton* applies to these terms as well as those specified in Magistrate Judge Pham's order.